PATRICK T. JACKSON & another *vs.* CHARLES C. JACKSON & others.

Suffolk.    January 28, 1891. — February 27, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & MORTON, JJ.

*Devise in Trust — Personal Property — Contingent Interest — Per Capita and Per Stirpes — " Issue."*

If personal property is given by a will to trustees, in trust to pay the income to a person during life and on the death of such person to pay the principal sum to his issue then living, the intention is presumed to be that such issue shall include all lineal descendants, taking *per stirpes,* unless some other language of the will discloses a contrary intention.

A testator by his will gave $10,000 in trust, the income to be paid to his son's wife for life; and at her death the principal to go to her husband, "if then living, and if not, to her issue. And if she should survive her said husband and should leave no issue, I give this $10,000 at her death to all my children then living, and the issue of any deceased child; such issue to take as by right of representation the shares of their respective parents." The son's wife, after surviving her husband, died, and left surviving two sons and a daughter, the sole child of a deceased daughter, and the children of one of the two sons, having had no other issue living since the testator's death. *Held,* that by her "issue" was meant issue living at her death taking by right of representation; and that her two sons and her daughter, and the child of her deceased daughter, would take the principal in equal shares.

FIELD, C. J.    This is a bill for instructions, brought by the trustees under the will of Charles Jackson, which, with two codicils, was duly proved in the Probate Court for the county of Suffolk on January 14, 1856.    Susan C. Jackson, the wife of Charles Jackson, the son of the testator, died on April 1, 1890, having survived her husband, and leaving issue surviving her as follows: Charles C. Jackson and Frank Jackson, her sons; Marian Jackson, her daughter; Amy Folsom, daughter of Susan C. Folsom, a deceased daughter of said Susan C. Jackson; and five children of said Charles C. Jackson, namely, Charles Jack-

son, Robert A. Jackson, Susan Jackson, George S. Jackson, and Frances A. Jackson. Susan C. Folsom died intestate on June 27, 1871, and the administrator of her estate has been made a defendant. Susan C. Jackson never had any issue living after the death of the testator, except those above named, and Susan C. Folsom never had any issue except said Amy Folsom.

The question is as to the distribution to be made of the ten thousand dollars given in trust by the fourth article of the will, the income of which was payable to Susan C. Jackson during her life. Charles C. Jackson, Frank Jackson, Marian Jackson, and Amy Folsom contend that the fund should be paid to them in equal shares, one fourth to each. The five children of Charles C. Jackson contend that it should be paid to them and to the four persons just named in the preceding sentence, concurrently, in equal shares, one ninth to each. The administrator of the estate of Susan C. Folsom contends that Susan C. Folsom took a vested interest in the fund as of the death of the testator, and that he, as her personal representative, is entitled to one fourth of the fund, or if this is not so, and if all the issue are to take *per capita*, that then he, as administrator, is entitled to one tenth of the fund. The clause of the fourth article of the will, the construction of which is in controversy, after a gift to the testator's son, Charles Jackson, proceeds as follows: " And I give to his said wife, Susan, for her life, the sum of ten thousand dollars, to be put in trust, and to be so secured as not to be liable for the debts of her husband, and so that she shall receive the income thereof to her sole and separate use during her life; and at her death the said ten thousand dollars shall be paid to her said husband, if then living, and if not, to her issue. And if she should survive her said husband and should leave no issue, I give this ten thousand dollars at her death to all my children then living, and the issue of any deceased child; such issue to take as by right of representation the shares of their respective parents."

We think that this clause means that on the death of Susan C. Jackson the ten thousand dollars shall be paid to her husband, if then living, or if not, to her issue then living, and that, if on her death she should leave neither husband nor any issue then living, the ten thousand dollars shall be paid to all the children

of the testator then living, and to the issue of any deceased child; "such issue to take as by right of representation the shares of their respective parents." The provision, that if Susan C. Jackson "should survive her said husband and should leave no issue," means leave no issue living at her death; and, taken in connection with the preceding clause, the meaning is that, if she survive her husband, and leave issue living at her death, the ten thousand dollars shall be paid to such issue, that is, to the issue living at her death. The interest of such issue therefore is contingent until her death.

There may be some doubt' whether, grammatically, the last clause, namely, "such issue to take as by right of representation the shares of their respective parents," qualifies only the clause which gives the property to the issue of the deceased children of the testator, or qualifies that and the clause which gives it to the issue of Susan C. Jackson; but we do not think it necessary to determine this.

In *King* v. *Savage*, 121 Mass. 303, the question was "whether Henry Savage was entitled to receive the entire principal of his father's share to the exclusion of his children," or whether he and his children should take *per capita*. By a codicil, property had been given in trust to pay the income to Samuel Phillips Savage, the father of Henry Savage, during his life, and upon his decease the principal was to be divided among the issue of Samuel Phillips Savage, and if he left no issue, then among his heirs at law. In other bequests in the will there were provisions that the children of the life tenants on their death should take the principal in equal shares, "the issue of any deceased child to take the share of their deceased parent." It is said in the opinion, that, in the connection in which the word "issue" is used in the last clause quoted, it "would be limited to children," and *Sibley* v. *Perry*, 7 Ves. 522 and *Pruen* v. *Osborne*, 11 Sim. 132, are cited. The decision was, that the word "issue" in the codicil should be limited to children, as it would be in other provisions of the will, and that therefore the issue of living children should be excluded. But if the word "issue" had been construed to mean descendants taking *per stirpes*, the same result would have been reached.

In *Ralph* v. *Carrick*, 11 Ch. D. 873, Lord Justice James said,

" It is, however, I think, settled, but rather by the case of *Pruen* v. *Osborne*, than by *Sibley* v. *Perry*, that as a general rule when you find a gift to a person and then a gift to the issue of that person, such issue to take only the parent's share, the word issue is cut down to mean children," and he proceeds to point out some of the hard consequences of that rule.   Lord Justice Brett said, " After hearing what the effect of such a general rule may be as described by Lord Justice James, I should have no objection to be present at the funeral of *Sibley* v. *Perry*."

In the case at bar, the word " issue " in the first part of the clause is not used in immediate connection with the word " parent," and in other corresponding provisions of the will and of the first codicil, where property is given to " issue " on the death of their parent, it is sometimes expressed that the issue shall take their parent's share by right of representation, and sometimes the gift is simply to issue without any qualification.   Although in England, when the word " issue " is used as the correlative of parent, it is held that the word " parent " means father and mother, and that the word " issue " means children, yet there as well as here the usual legal meaning of the word " issue " is all lineal descendants.   This is also the popular meaning in this Commonwealth.   *Martin* v. *Holgate*, L. R. 1 H. L. 175.   *Freeman* v. *Parsley*, 3 Ves. 421.   *Weldon* v. *Hoyland*, 4 De G., F. & J. 564. *Bigelow* v. *Morong*, 103 Mass. 287.   *Hills* v. *Barnard*, 152 Mass. 67.   We think that, as a matter of verbal construction, it would be as easy and natural to say that where the words " parents " and " issue " are used in connection with each other, the word " parents " means ancestors, as that the word " issue " means children; and in the construction of any instrument it is always necessary to look beyond the literal meaning of words.

The English decisions are collected in 2 Jarm. Wills, (Bigelow's ed.) 101–107.   They do not seem to be wholly satisfactory even to the English judges, and in *Hills* v. *Barnard* we refused to follow the decision in *Martin* v. *Holgate*, in a case closely resembling that, and reached a conclusion analogous to that of the Court of Appeals in *Ralph* v. *Carrick*.   The tendency of our decisions has been more and more to construe " issue," where its meaning is unrestricted by the context, as including all lineal descendants and importing representation, and certainly, when

the issue take as of a particular time after the death of the testator, and only the issue living at that time take, the issue of deceased issue take by a sort of substitution for their ancestors. The present is not a case where the issue take as of the death of the testator, or where by the terms of the will issue take share and share alike. *Hills* v. *Barnard*, 152 Mass. 67. *Dexter* v. *Inches*, 147 Mass. 324, 325. *Hall* v. *Hall*, 140 Mass. 267.

We are of opinion that, when by a will personal property is given in trust to pay the income to a person during life, and on the death of such person to pay the principal sum to his issue then living, it is to be presumed that the intention was that the issue should include all lineal descendants, and that they should take *per stirpes*, unless from some other language of the will a contrary intention appears.

The result is, that Charles C. Jackson, Frank Jackson, Marian Jackson, and Amy Folsom are entitled to the principal of the trust fund in equal shares. *Decree accordingly.*

*F. C. Lowell*, for the plaintiffs, read the papers in the case.

*J. L. Thorndike*, for Charles C. Jackson and others.

*J. C. Gray*, for the children of Charles C. Jackson.

*W. R. Trask & R. F. Simes*, for the administrator of Susan C. Folsom.